

**SIGNED this 30th day of January, 2013**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:

JAYSON ERIC SMITH,                                    CASE NO. 12-11603
                                                      CHAPTER 13

         Debtor;

---------------------------------------------------------------------------------------------------------------

In re:

ELNOR L. HENDERSON,                                   CASE NO. 12-11857
                                                      CHAPTER 13

         Debtor.

1

Appearances:

     Nicholas B. Foster, Office of the United States Trustee, Attorney for the Assistant United States Trustee

     Kara West, Office of the Standing Chapter 13 Trustee C. Kenneth Still, Attorney for C. Kenneth Still, Trustee

     Jerrold D. Farinash, Kennedy, Koontz  & Farinash, Chattanooga, Tennessee, Attorney for C. Kenneth Still, Trustee

     Martin J. Levitt, Levitt and Levitt, Chattanooga, Tennessee, Attorney for Barbara S. Arthur

The Honorable Shelley D. Rucker
United States Bankruptcy Court

## **MEMORANDUM**

     The United States Trustee ("UST") and the Chapter 13 Trustee ("Trustee") filed Motions to Examine Fees Paid to Attorney Barbara Sims Arthur pursuant to 11 U.S.C. § 329(b) and Request for Sanctions in the chapter 13 cases filed on behalf of Jayson Smith and Elnor Henderson[1]  ("Smith Sanctions Motion" and "Henderson Sanctions Motion," collectively the "Sanctions Motions").

     Mr. Smith and Ms. Henderson approached Ms. Arthur about filing a bankruptcy at a time when Ms. Arthur was awaiting automatic reinstatement to practice in the United States District Court for the Eastern District of Tennessee ("District Court").  She had been suspended from practice before the District Court because she had been suspended by the Tennessee Supreme Court.  As a result of her suspension from practice in the District Court, she lost her ability to practice in the Bankruptcy Court for the Eastern District of Tennessee ("Bankruptcy Court") and lost her electronic filing privileges.  Despite her inability to file documents or to appear in

---

[1] The two motions were tried at the same hearing although separate exhibits were provided for each debtor. For ease of reference the court will refer to exhibits filed in Case No. 12-11603 related to the Sanctions Motions filed in that case as "Smith Exhibit #" and to exhibits filed in Case No. 12-11857 related to the Sanctions Motion filed in that case as "Henderson Exhibit #."

2

Bankruptcy Court, she undertook to represent these debtors. She explained to the debtors that she

could not file their pleadings electronically and offered as a solution to her filing problem that

they could execute the filings as *pro se* debtors. Both debtors signed petitions which stated that

they were not represented by counsel. Ms. Arthur's office filed the pleadings. Shortly thereafter

she was readmitted to practice before the District Court and regained her Bankruptcy Court filing

privileges. She filed a notice of appearance disclosing her representation. By the time the first

meeting of creditors was held, she was able to appear on their behalf as counsel of record.

*Arguments of the Parties*

The parties have very different views of the appropriateness of this conduct. Ms. Arthur

contends the following. She fully complied with her six month suspension. She was authorized to

practice law when she advised these two individuals about bankruptcy and assisted them in

preparing their petitions and schedules. She assumed her filing privileges would be reinstated

when the term of her suspension ended. Although her assumption concerning reinstatement was

incorrect, her assumption was an innocent mistake regarding the process for regaining her filing

privileges. In response to the UST's and Trustee's motions, her brief, and in her hearing

testimony, she continues to question whether she had to be reinstated given the language of the

District Court order of suspension and the use of the term "automatically" in the District Court's

local rule regarding reinstatement. Nevertheless, upon learning of her mistake, she took the

necessary steps to comply with the local rule regarding reinstatement. Based upon her

understanding about the automatic reinstatement requirements, and because she contends she

needed to help the debtors as quickly as possible, she limited the scope of her employment

specifically to avoid running afoul of the District Court's order. Since she could not appear of

record to file the petitions, she instructed the debtors to proceed *pro se*. The scope of her

3

employment included everything except using the electronic case filing system ("ECF") and presumably appearing in court before she was reinstated. Therefore, the debtors' statements in their petitions that they were not represented by counsel for filing were accurate. Such a limitation on the scope of representation is allowed by Rule 1.2 of the Tennessee Rules of Professional Conduct and there is no ethical rule against her not disclosing her involvement unless that concealment also involves a violation of some other duty such as "competence, diligence, loyalty, communication, confidentiality" or "conflicts of interest." Smith, 12-11603, Trial Brief of Barbara Arthur at 12 [Doc. No. 102]; Henderson, 12-11857, Trial Brief of Barbara Arthur at 12 [Doc. No. 90]. In addition, she committed no fraud or dishonesty with regard to any fact that was material to the bankruptcy proceeding. After filing, neither she nor the debtors misled the court. As soon as she was reinstated, she filed notices of appearance disclosing her involvement and appeared at the meetings of creditors. There was no hearing at which the court was misled by the debtors' representations on their petitions that they were not represented by an attorney. Finally, the debtors suffered no harm by this approach to her filing problem.

In sharp contrast to Ms. Arthur's characterization of the events, the UST contends Ms. Arthur misled the court in violation of her ethical obligations. According to the UST, Ms. Arthur's actions constituted the practice of law before the court in violation of the local rules. Ms. Arthur used the debtors to cover her misconduct. Ms. Arthur should disgorge her fees (which she has agreed to do). She should be sanctioned pursuant to 11 U.S.C. § 105 which gives the court authority to discipline an attorney who appears before the court for an intentional misrepresentation to the court. She should be suspended from practice because she has displayed a pattern of ignoring her obligations to maintain her good standing in the bar and she continues to practice law without being admitted to do so.

The Chapter 13 trustee contends that Ms. Arthur's instructions to her clients that they sign their petitions to reflect that they were not represented by counsel was part of a "scheme" to avoid the consequences of her suspension and was an effort to defraud the court. The scheme required her to conspire with her clients to commit what he terms as fraud that could have resulted in the loss of their discharge for making a false oath. He also seeks to have her held accountable under Rule 9011 as having made a false representation to the court. He admits that she did not sign the petitions as attorney of record; nevertheless, she should be held accountable as the author of the petitions and she presented them to be filed with the intent to appear in the cases as soon as she was cleared by the District Court to do so. He also seeks her suspension. He argues that her defense that no harm resulted from her having her clients file *pro se* is irrelevant to the issue of whether an ethical violation occurred.

After consideration of the parties' arguments, the evidence presented at trial, the record in the chapter 13 proceedings, and the applicable law, the court has reached the following decision. First, the court finds that ethical violations occurred. Although the court finds a limitation of representation does not per se violate Ms. Arthur's professional obligations, the manner in which she attempted to limit her representation did result in an ethical violation.  First, her limitation was ineffective. Second, she did not obtain her clients' informed consent to such a limitation. Third, and most importantly, the court finds that the limited representation as Ms. Arthur has portrayed it was not reasonable under the circumstances of these two cases.  Second, the court finds that the nondisclosure of an attorney's participation is a breach of the attorney's duties of candor to the tribunal. This court holds that directing a client to make an affirmative misrepresentation about attorney participation is an act of dishonesty. Further, the court finds that a misrepresentation about attorney participation is a material misrepresentation in a

bankruptcy proceeding. The court also notes that these holdings on disclosure of attorney participation appear to be ones of first impression in this court.  The court also acknowledges that the issue of whether nondisclosure of attorney involvement is an ethical violation is the subject of academic discussion and legal controversy between bar associations seeking to provide citizens with more representation and courts seeking to ensure fairness and candor in litigation. While Ms. Arthur directed her clients to make an affirmative misrepresentation to the court and she failed to disclose her participation in the cases, the court finds that she did not knowingly breach her duty to the tribunal based on the state of the case law and applicable ethics opinions regarding disclosure of attorney participation. The court also find that Ms. Arthur violated Fed. R. Bankr. P. 9011 by presenting the petitions for an improper purpose.Based on the record before the court and for the reasons stated below, the court GRANTS the Sanctions Motions in part and DENIES them in part. The court will not suspend Ms. Arthur but will impose monetary and other sanctions as compensation to the parties involved.

The court's ruling is based upon the following findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052 made applicable to contested matters by Fed. R. Bankr. P. 9014(c). This court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1332 and § 157 (b)(2)(A).

# I.      FACTS

## A.  Ms. Arthur's Suspension History

Ms. Arthur is an experienced attorney. She began her career as a law clerk for a Tennessee Supreme Court justice and has been in private practice for approximately 35 years in the Chattanooga area since leaving that position.  She has a substantial consumer bankruptcy practice and has represented hundreds of debtors before this court.

6

In late March of 2012, Ms. Arthur had just completed six months of active suspension imposed on her by the Board of Professional Responsibility for the Tennessee Supreme Court. She was suspended because she continued practicing law while on administrative suspension. Smith Exhibit #15; Henderson Exhibit #12. An administrative suspension had been imposed on Ms. Arthur in 2005 for failure to pay her registration fees to the Board of Professional Responsibility in Tennessee and her failure to pay her registration fees for four years in Georgia. *Id.* While she was suspended she continued to practice law and file bankruptcy cases.

At the September 28, 2012 hearing on the Sanctions Motions, she explained how the failure to pay her fees occurred. Her husband was her office manager at the time the fees were due. He neglected to pay her fees and did not inform her that her license had been suspended. When she continued to practice during the administrative suspension, the Board imposed a second round of sanctions on her for the unauthorized practice of law. These sanctions included six months of active suspension followed by eighteen months of probation and supervision by a practice mentor. *Id.* The Board imposed the sanctions on September 13, 2011, following Ms. Arthur's unsuccessful appeals to the Tennessee Circuit Court and the Tennessee Court of Appeals. Smith Exhibit #20, Transcript of Deposition of Attorney Arthur, p.15, lines 23-25, p. 16, lines 1-5; Henderson Exhibit #23, Deposition Transcript of Attorney Arthur, p. 15, lines 23-25, p. 16, lines 1-5. The sanctions became final on September 23, 2011. At that time Ms. Arthur left her office and did not practice law for the next six months.

Following the suspension imposed by the Tennessee Supreme Court, the District Court issued a show cause order to Ms. Arthur pursuant to E. D. Tenn. LR 83.7(a) – (k). Ms. Arthur responded to the show cause order but was not successful. District Court Judge Curtis Collier suspended Ms. Arthur from practice in the District Court on November 10, 2011. Smith Exhibit

#16; Henderson Exhibit #13.  The District Court order recited that she was "SUSPENDED from the practice of law in the United States District Court, Eastern District of Tennessee, for the six months of her active suspension with the Tennessee Supreme Court.  E.D.TN. LR 83.7(g)." Smith Exhibit #16; Henderson Exhibit #13.   Because Ms. Arthur responded to the show cause order, the court finds that she was familiar with the first eleven subsections of E. D. Tenn. 83.7(a)-(k). Had she familiarized herself with the next subsection which described the process for reinstatement, this entire problem might have been avoided.

Ms. Arthur's suspension from District Court affected her ability to appear in the Bankruptcy Court. To practice before the Bankruptcy Court, an attorney must be both admitted to practice in the United States District Court for the Eastern District of Tennessee and must be presently in good standing before the District Court. E.D.Tenn. LBR 2090-1(a)(1).  All attorneys practicing before the Bankruptcy Court are also required to file their pleadings electronically through the Electronic Case Filing System ("ECF"). Administrative Procedures for Electronic Case Filing, I. A. Also, by General Order, the Bankruptcy Court adopted Administrative Procedures for Electronic Case Filing in 2005, as amended in 2008 and 2012.  To be eligible to use ECF, an attorney must be in good standing and admitted to practice in the District Court. Administrative Procedures for Electronic Case Filing, II.A.1. Based on these rules and her suspension by the District Court, the Bankruptcy Court terminated her ECF privileges and she lost her ability to appear in the Bankruptcy Court.

### B.  Ms. Arthur's Return to Practice

Ms. Arthur's reinstatement by the Tennessee Supreme Court was automatic when the term of her suspension expired. On March 23, 2012, Ms. Arthur returned to her office and resumed practicing law. Within those first few days and as a result of her contact with Mr. Smith,

she learned from the Bankruptcy Court Deputy Clerk that she could not resume electronic filing

in Bankruptcy Court until she was reinstated to practice in the District Court.

 Subsection l of the same District Court local rule that outlines the suspension procedures

also provides the procedure for reinstatement. E.D.Tenn. LR 83.7(l). Ms. Arthur testified that she

was not aware of the reinstatement requirement until her conversation with the Bankruptcy Court

Deputy Clerk. She continues to contend that there was nothing in the District Court's order that

would have alerted her to the fact that her suspension would last any longer than the state court

suspension. Whatever deficiencies she claims the suspension order may have had, the District

Court Local Rules are quite clear about the procedures for reinstatement.

 E.D.Tenn. LR 83.7(l) provides:

 (l) **Reinstatement.** Reinstatement shall be had only upon a petition by the
disciplined member. A former member who has been suspended or disbarred from
the practice of law by this Court [District Court] because of suspension or
disbarment in another court of record may, upon reinstatement to the other court,
file a petition for reinstatement to this Court. Each petitioner shall pay an
application fee to the Clerk which is not refundable. The petition shall be filed
with the Clerk and shall contain a concise statement of the circumstances of the
disciplinary proceedings, the discipline imposed, and the grounds that justify
reinstatement.  The petition shall be signed by the petitioner under penalty of
perjury stating that he or she has read the petition and that the factual allegations
contained therein are correct to the best of the petitioner's knowledge. The
petitioner has the burden of proving by clear and convincing evidence that he or
she has the requisite good moral character, ethical standards, professional
competence, and learning in the law necessary to serve as an officer of the Court
and to be readmitted to the practice of law.

 (1) A petitioner who has been suspended for a definite term may be
*automatically* reinstated at the end of the period of suspension upon filing the
petition for reinstatement accompanied by an affidavit showing compliance with
the provisions of the order of suspension.

E.D. Tenn. L.R. 83.7(l) (emphasis added).  In compliance with this rule, Ms. Arthur filed her

petition for reinstatement accompanied by an affidavit with the District Court on April 2, 2012.

Her petition for reinstatement was granted on April 12, 2012, without further notice or hearing.

### C.   Representation of Mr. Smith

During her first week back at work in March of 2012, Ms. Arthur met with Mr. Smith about filing bankruptcy. She testified that she first met with Mr. Smith on March 24th, and the petition was filed on March 28, 2012. She and her office gathered the necessary information from him to file a chapter 13 petition and prepared to file his petition and accompanying schedules. It appears that all of the documents to commence a Chapter 13 case were prepared and ready to file by March 28, 2012.  However, only the petition, the creditors' matrix, the Social Security Number Certification, the Certificate of Credit Counseling and the Application to pay the filing fee in installments (collectively "Skeleton Filings") were filed on that date.  Smith Exhibit #20, Transcript of Deposition of Attorney Arthur, p. 59, lines 10-15; Henderson Exhibit #23, Deposition Transcript of Attorney Arthur, p. 59, lines 10-15.

Ms. Arthur testified that she counseled Mr. Smith about filing his own petition after she learned that she could not file the petition until she was reinstated to practice in the District Court. In the process of discussing her filing problem with him, she disclosed that she had been suspended and could not actually file the bankruptcy petition for him. She testified that she did not discuss with him the possibility of obtaining other counsel. Ms. Arthur testified that "she had done all of the work" and she believed that sending her work to another attorney would only delay the filing Mr. Smith needed.

Since she could not comply with this court's rule mandating electronic filing, she had Mr. Smith indicate on his petition that he was not represented by an attorney so that the petition could be filed. The petition contains the representation that the debtor "declares under the penalty of perjury that the information provided in this petition is true and correct. … [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained

and read the notice required by 11 U.S.C. § 342(b)." Smith Exhibit #1, Smith Petition p. 3. On

Official Form 1 of the Skeleton Filings, below the debtor's signature, in the signature box for the

attorney there is a notation: "Debtor not represented by attorney." Ms. Arthur admitted that she

was originally listed as counsel on the filing but removed her name from Mr. Smith's petition

and inserted the statement about the debtor not being represented by counsel. The petition does

not contain any clarifying language to indicate that the debtor was acting *pro se* solely for

purpose of filing the Skeleton Filings.

Although Ms. Arthur contends that she had limited the scope of her representation and

that Mr. Smith represented himself in filing the Skeleton Filings, the court does not find that

there is any evidentiary support for this contention. She did not reduce her attorney's fee to

reflect the debtor's alleged assumption of some of her duties. She testified that she believed that

she had entered into a written representation agreement with Mr. Smith, but that she had been

unable to find it. There is no evidence that she had anything in writing that altered her standard

representation agreement to reflect any limitation in the scope of her representation. She did not

address verbally or in writing what Mr. Smith would need to do if her reinstatement was not

automatic, or if the reinstatement did not occur until after his first meeting of creditors, or if he

needed to file additional documents to prevent the dismissal of his case. Her office staff

physically delivered the Skeleton Filings to Bankruptcy Court to commence the case, so she

handled even the act of filing.

After receiving the order of reinstatement from the District Court, she filed a notice of

appearance on April 16, 2012. At that time she filed the remaining schedules, statement of affairs

and Chapter 13 Plan, although the schedules and statement of financial affairs appear to have

been ready to file on March 28, 2012 based on Mr. Smith's signature on his statement of

financial affairs. *In re Smith*, No. 12-11603, Declaration Concerning Debtor's Schedules, Doc.
No. 22. Although the record is not clear whether the plan signed by Ms. Arthur was available for
filing on March 28th, Mr. Smith testified at his 341 meeting that he went to Ms. Arthur's office
two or three times and the last time was on March 28th. Smith Exhibit # 14, at p. 21, lines 20-25,
p. 22, lines 1-15.

On March 28, 2012, the Bankruptcy Court ordered Mr. Smith to file the additional
documents by April 11, 2012. The order provided that "The failure of the debtor(s) to comply
with this order will constitute cause for dismissal of this case. ... and the court may, without
further notice, enter an order summarily dismissing this case." *In re Smith*, No. 12-11603, Order
Regarding Certain Unfiled Documents, Doc. No. 5. Because Ms. Arthur filed only the Skeleton
Filings and Mr. Smith's petition stated that he was not represented by counsel, only Mr. Smith
received the court notice of the deficiencies in his Skeleton Filings. When Ms. Arthur made her
appearance, she filed the plan and served it on creditors and parties in interest on April 16, 2012,
five days after the deadline. Plan [Doc. No. 27]; Certificate of Service [Doc. No. 31]. In Mr.
Smith's case, the meeting of creditors also had to be rescheduled because insufficient notice of
the plan had been provided.

### D. Representation of Ms. Henderson

Ms. Arthur first met with Ms. Henderson on April 7, 2012. By this time, she was aware
of the loss of her filing privileges and had filed her petition for reinstatement with the District
Court. Ms. Henderson's bankruptcy petition was filed on April 11, 2012. Ms. Arthur was
reinstated on April 12, 2012.

Ms. Arthur entered into her standard representation agreement with Ms. Henderson.
Henderson Exhibit #16, Representation Agreement. She provided counseling regarding which

chapter to file. She, with her office staff's assistance, prepared the petition and the creditors'

matrix. As she had with Mr. Smith's filings, she had Ms. Henderson indicate on her petition that

she was not represented by an attorney. The petition contains the representation that the debtor

declares "under the penalty of perjury that the information provided in this petition is true and

correct. … [If no attorney represents me and no bankruptcy petition preparer signs the petition] I

have obtained and read the notice required by 11 U.S.C. § 342(b)."  Henderson Exhibit #1,

Henderson Petition, p. 3. On Official Form 1 below Ms. Henderson's signature, there is a

notation in the signature box for the attorney: "Debtor not represented by attorney." Ms.

Henderson also signed her name on the petition in the box reserved for the attorney's signature.

Ms. Arthur's staff physically filed the Skeleton Filings for Ms. Henderson with the Bankruptcy

Court. On April 12, 2012, the Bankruptcy Court issued an order requiring the debtor to file her

plan, schedules and statement of financial affairs in addition to other required documents. The

deadline to complete the filing was April 25, 2012. Ms. Arthur filed the required documents on

April 25, 2012, along with her notice of appearance. Although the additional filings were not

electronically filed until April 25, 2012, they appear to be based on information provided in the

intake documents completed by Ms. Henderson on April 9, 2012, as indicated by her signature.

Henderson Exhibits #1-6.

### E.  Smith First Meeting of Creditors

At their respective first meetings of creditors, both debtors were questioned extensively

by the attorney for the Trustee about whether they were represented by counsel. The Trustee

asked Mr. Smith if he had planned to file his petition and then have Ms. Arthur to come into the

case later. Smith Exhibit #14, Transcript of 341 Meeting, p. 3, lines 19-21. When asked about

what he prepared, he answered, "I followed her guidance." He testified that everything was

prepared at her office. *Id.* at p. 15, lines 13-15.  He testified that he was not told how much the

fee would be. *Id.* at p. 22, line 20-22. He testified that Ms. Arthur told him that someone from

her office would file the petition with the court. *Id.* at p. 23, lines 5-24. He testified that he was

not told why his petition had to be hand-delivered to the courthouse to be filed.  *Id.* at p. 23-24.

His recollection about what he knew about the problem created by the suspension follows:

Q: Did she ever tell you she was not going to be your attorney?
A: No, sir.
Q: Did she tell you why you were initially going to be labeled as being *pro se* instead of her
being your attorney when you filed the case?
A: We had a conversation afterwards, yes, sir, but not—not prior to that.
Q: All right. And what was that conversation that was afterwards?
A: There was – I guess there was some issues with the licensing or something of that nature. I
don't really know all of the terminology.
Q: So, prior to your bankruptcy case being filed, you weren't aware that Ms. Arthur wasn't able
to practice in the Bankruptcy Court?
A: No, sir.
Q:  And then you found out, after your petition got filed, that she was not licensed to practice in
the Bankruptcy Court.
A: That there were some issues going on, yes, sir, some issues that had to be addressed maybe. I
don't….
. . . .
Q: Did she tell you that she was going to file a notice of appearance on your behalf sometime
after your petition got filed?
A: I don't recall if I was told that or not.
Q: All right. Did she tell you that, at some point in time, she was later going to rep—that she was
later going to be your attorney in the bankruptcy case after the case got filed?
A: Yes, sir.
Q: She did tell you that.
A: That, if I needed any assistance, yes, sir, she would be available.

*Id.* at p. 24, lines 5-25, p. 25, lines 1-19.

### F.  Henderson First Meeting of Creditors

The line of questioning was similar at Ms. Henderson's meeting of creditors which began

on May 9, 2012, and continued on June 13, 2012. Ms. Henderson, who had filed eight previous

bankruptcy cases, was questioned about whether she had ever filed a bankruptcy for herself. She

responded that she had, but that it was not this case. Henderson Exhibit #11, Transcript of 341

Meeting, p. 6, lines 1-7. She acknowledged taking her credit counseling at Ms. Arthur's office

and having the "ticket" sent to her lawyer's office. She was aware that Ms. Arthur was not able

to file the petition as her attorney. She testified that "something happened to her license or

something, and then she got them back." *Id.* at p. 16, lines 23-25. She testified that she had Ms.

Arthur file her documents for her and that she was told later that Ms. Arthur could represent her.

*Id*. at p. 8, lines 21-25. Although she knew that she had stated in her petition that she was not

represented by an attorney, she did not know that she was signing her petition under penalty of

perjury. She could not remember whether Ms. Arthur had discussed that with her. *Id.* at p. 9,

lines 20-25, p. 10, lines 1-5. Ms. Henderson testified that she could not read or write. *Id.* at p. 8,

line 6. From her other testimony, it does appear that she could write her name and had a limited

ability to read. *See, e.g.,* Henderson Exhibit #11, Transcript of 341 Meeting, p. 9, lines 13-19, p.

12, line 7-8; p. 12, lines 18-24.

   The representation agreement she executed with Ms. Arthur contains nothing about Ms.

Henderson's filing her own petition. Henderson Exhibit #16, A Debt Relief Agency Re: Chapter

13/Representation Agreement. To the contrary, the agreement states that Ms. Arthur would

"[p]repare [Ms. Henderson's] bankruptcy petition, schedules, statement of affairs, and such other

documents as are necessary, and review and file the petition under the Chapter [she] select[ed]."

*Id.* at ¶ 3. Ms. Arthur also committed to "[p]repare for and attend the § 341 Meeting of Creditors

with [her]." *Id*. at ¶ 4. At the time the agreement was executed on April 7, 2012, Ms. Arthur

could not file any documents nor could she appear as attorney of record. There is no disclosure

of this fact anywhere on the Representation Agreement.

15

### G.  Withdrawal by Ms. Arthur

Ms. Arthur has now withdrawn from representation of both debtors. She has received no fees for her services and she has voluntarily waived her right to receive any fees. Both cases have proceeded with substitute counsel.

## II.    ANALYSIS

The UST alleges that Ms. Arthur's conduct violates the Tennessee Rules of Professional Conduct, specifically, that she assisted Mr. Smith and Ms. Henderson in filing a false and misleading petition which stated that they were not represented by counsel. He seeks the imposition of sanctions under 11 U.S.C. § 105(a), the section granting the court power to discipline the attorneys appearing before it. *In re Riser*, 58 Fed. Appx. 169, 171 (6th Cir. 2003). *Mitan v. Int'l Fid. Ins. Co.,* 23 Fed. Appx. 292, 298 (6th Cir. 2001). The Chapter 13 Trustee adds that she also violated Rule 9011 of the Federal Bankruptcy Rules by causing the misleading petitions to be filed even though she did not sign them. He also alleges that she violated the Tennessee Rules of Professional Conduct by failing to disclose her representation and engaging in "ghostwriting" the pleadings for these debtors.

### A.  Violations of Tennessee Rules of Professional Conduct

In determining whether any ethical violations have occurred which the court should sanction, the court must look to the Tennessee Rules of Professional Conduct ("TRPC"), adopted as Rule 8 of the Rules of the Tennessee Supreme Court. Those rules have "likewise [been] adopted by this court as rules of professional conduct to the extent they relate to matters within this court's jurisdiction." E.D.Tenn. LBR 2090-2.  The court finds that the rules regarding dishonest conduct are TRPC 1.0(d), 1.2(d), 3.3, 3.4 and 8.4. In addition, Fed. R. Bankr. P. 9011

16

imposes obligations on parties who sign pleading filed with the court.  Ms. Arthur contends her

conduct falls within an exception to these duties of candor in cases in which (1) the

misrepresentation involves the nondisclosure of an attorney's participation in preparation of

pleadings with *pro se* litigants and (2) the attorney has limited the scope of her representation.

Because Ms. Arthur relies heavily on her position that she limited the scope of her representation

to exclude the filing of the petition such that there was no misrepresentation regarding her

participation, the court will address whether her representation was limited and whether the

limitation violated TRPC 1.2(c).

     1.  TRPC 1.2(c) Limitation of Scope of Representation

     The Tennessee Rules of Professional Conduct require that "a lawyer shall provide

competent representation to a client. "Competent representation requires the legal knowledge,

skill, thoroughness and preparation reasonably necessary for the representation." TRPC 1.1.  In

determining whether a lawyer employs the requisite knowledge and skill in a particular matter,

the relevant factors to be considered are the lawyer's general experience, the lawyer's training

and experience in the field in question, and whether it is feasible to refer the matter to another

attorney… or associate or consult with, a lawyer of established competence in the field in

question.  TRPC Rule 1.1, Comment [1]. When an attorney is hired to make filings in a

particular court, one of the skills required in order to provide competent assistance would be the

ability to practice before the court in which the litigation is to be initiated. Alternatively, one of

the acts of preparation would be to obtain admission to that court *pro hac vice* or to associate

counsel who was admitted so that the filing could be made in compliance with the rules of that

court.

When Ms. Arthur discovered that she had committed to perform services that she was not competent to perform, she attempted to limit the scope of her employment in order to avoid violating her ethical obligations. However, she "associated" not another attorney, but rather the debtors themselves to handle what she could not. Ms. Arthur argues that the Tennessee Rules of Professional Conduct allow such limitation. Under the facts presented to these two cases, the court disagrees.

Rule 1.2(c) provides:

> A lawyer may limit the scope of representation if the limitation is reasonable under the circumstances and the client gives informed consent, preferably in writing.

TRPC Rule 1.2(c). The court finds three problems with Ms. Arthur's proposed limited representation.  First, she did not effectively limit the scope of her representation. Second, she did not obtain the informed consent of her clients.  Third, under the circumstances of these cases, a limitation that left these debtors on their own for a few days and required them to make an inaccurate statement under oath was not reasonable.

### (a)  The limitation was ineffective.

Ms. Arthur did not limit the scope of her employment in her representation agreements. She attempted to modify the agreements verbally after their execution; however, the form representation agreement states, "This document represents the complete agreement between the parties and may not he [sic] modified or replaced except by subsequent written agreement of the parties." Henderson Exhibit # 16, A Debt Relief Agency Re: Chapter 13/Representation Agreement, p. 2. The court acknowledges that TRPC Rule 1.2(c) does not require that the limitation be in writing, only that it is preferable that there be a writing. However, the Bankruptcy Code does require a written engagement agreement that specifies what the attorney will do for the debtor.  11 U.S.C.

18

§ 528(a)(1). Failure to provide the services promised is another violation of the
Bankruptcy Code. 11 U.S.C. § 526(a)(1). Agreements in violation of these sections are
void. 11 U.S.C. § 526(c). The court finds that the verbal attempt to limit her
representation was ineffective under the terms of her contract and under applicable
bankruptcy law.

*(b)  The debtors did not give informed consent to the limitation.*

Even if Ms. Arthur's limitation had been effective, the court would still have to
determine whether the debtors gave their informed consent to the limitation negotiated after Ms.
Arthur learned of her inability to appear before the Bankruptcy Court.

Informed consent is a defined term in the TRPC. "Informed Consent denotes the
agreement by a person to a proposed course of conduct after the lawyer has communicated
adequate information and explanation about the material risks of and reasonably available
alternatives to the proposed course of conduct." TRPC Rule 1.0(e). The comments elaborate on
this process.

> Ordinarily, [obtaining informed consent] will require communication that
> includes a disclosure of the facts and circumstances giving rise to the
> situation, any explanation reasonably necessary to inform the client or
> other person of the material advantages and disadvantages of the proposed
> course of conduct and a discussion of the client's or other person's options
> and alternatives. In some circumstances it may be appropriate for a lawyer
> to advise a client or other person to seek the advice of other counsel.

*Id.*, Comment [6].

At their meetings of creditors, both debtors testified that they were aware that Ms.
Arthur could not file their petitions for them. There is nothing in writing from Ms. Arthur
in evidence that discloses to these debtors that they must file their own petitions. There is
no evidence that Ms. Arthur communicated what problems her inability to appear in court
might cause these individuals. There is nothing that tells them that, until she is reinstated,

they will receive notices from the court and that their cases may be dismissed if they fail

to respond. She did not inform them that she would not be able to appear at any hearings

on their behalf, including their first meeting of creditors, until she was reinstated. She did

not discuss with them the implications of signing a representation agreement with her,

only to then declare under penalty of perjury that they were not represented by counsel.

Ms. Arthur admits she did not discuss retaining other counsel with them. She did not

disclose what other counsel could do for them that she could not. In addition to failing to

make any such disclosures to ensure that they understood that her representation was

limited, she acted in a manner inconsistent with her own assertion that she did not

represent these debtors with respect to filing their petitions. Her office staff actually

delivered the pleadings to the court. Based on the evidence presented at the hearing, the

court finds that Ms. Arthur did not obtain the informed consent of her clients to limit the

scope of her representation.

*(c) The limitations were not reasonable.*

TRPC 1.2 (c) imposes a requirement of reasonableness on any limitation of the scope of

representation.  Ms. Arthur contends that she limited the scope of her representation as

contemplated by Rule 1.2(c) and therefore she did nothing unethical. Ms. Arthur did not explain

at the hearing why she thought a limitation that left her clients without counsel during an

indefinite period was reasonable. In her brief, she argues that "[i]t is very typical, during the

period immediately following a skeleton petition, for the client not to require the services of an

attorney of record. This proved to be true in both cases."  Henderson, 12-11857, Addendum to

the Trial Brief of Barbara S. Arthur at 4 [Doc. No. 102]; Smith, 12-11603, Addendum to the

Trial Brief of Barbara S. Arthur at 4 [Doc. No. 114]. The court disagrees with both her general premise and her assertion that it was true under the specifics of these cases.

In every case in which a skeleton petition is filed, the court issues a deficiency notice within a day or two of the filing, requiring that additional filings must be made by a date certain or the case will be dismissed. That notice is sent to the attorney of record unless the debtor is *pro se*. In that case the notice of a potential dismissal is sent to only the debtor.  Also during the early days of a case, the court frequently hears both motions for contempt arising from actions by repossessing creditors who ignore the stay and motions to dismiss or for relief from the stay filed by creditors alleging that the cases were filed in bad faith.  All of these motions may be set on shortened notice and the reduction in time may be obtained *ex parte*. Fed. R. Bankr. P. 9006(c); E.D. Tenn. LBR 9006-1(a) and (b).

As for the potential risk of an aggressive secured creditor seeking relief from the stay, both of these debtors sought Ms. Arthur's help because of their concerns about repossession. As for potential allegations of bad faith, Ms. Henderson had filed eight previous cases.  The existence of numerous previous filings is a common allegation made to support a motion to dismiss for bad faith. Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4th ed. § 334.1 at ¶ 7 (2004)( "The most compelling evidence of bad faith in support of dismissal of a Chapter 13 case is often a history of serial, multiple or abusive filings by the debtor.") Had hearings on such motions been scheduled before April 12th, Ms. Arthur would not have been able to appear on their behalf even if Mr. Smith had understood what a notice of the hearing meant without her guidance or if Ms. Henderson had even been able to read the notice. The fact that there was no harm done to these debtors is attributable more to luck than to the reasonableness of Ms. Arthur's limitation of her services with respect to these two debtors.

In Mr. Smith's case, a problem "during the period immediately following a skeleton filing" was not a hypothetical issue. Mr. Smith faced dismissal of his case for the deficiencies in the Skeleton Filings. The court sent Mr. Smith a notice that his case could be dismissed if the additional pleadings were not filed by Wednesday, April 11, 2012, the day before Ms. Arthur was reinstated. Smith, 12-11603, Doc. No. 5.  But for the court's delay in entering the order of dismissal after the deadline, Mr. Smith's case would have been dismissed. Ms. Arthur did not file the required pleadings until Monday, April 16, 2012, although at least some of the required documents had been prepared during his initial meeting with her.  Smith Exhibit #14, Transcript of 341 Meeting, p. 27, line 17-21. If Mr. Smith had been required to refile his case to obtain the relief Ms. Arthur had agreed to seek for him, he would have had to carry the additional burden of showing changed circumstances under 11 U.S.C. § 362 (c)(3) to obtain the protection of the automatic stay for more than thirty days.

Just as risky as leaving her clients without an attorney early in the case was her request that her clients make a statement under penalty of perjury that was inconsistent with the written representation agreement she had already had them execute.  The debtors were represented by counsel in every way except for the physical act of filing, based on Ms. Arthur's testimony, and her office staff handled even that act. Based on the existence of the terms of the representation agreements, and her continuing to act as their attorney for all purposes, the court finds that these debtors were never *pro se*. The statement that they were not represented by an attorney was not accurate, and Ms. Arthur was aware that it was not accurate.  Their petitions left the court with the impression that there was no attorney involved.  A limitation in the scope of representation that requires a client to make an affirmative misrepresentation to the court is not a reasonable limitation and, as discussed below, is a dishonest act in violation of an attorney's ethical duties.

For the foregoing reasons, the court finds that Ms. Arthur failed to limit her scope of her representation in compliance with TRPC 1.2(c).

2.  Duties of Candor toward the Tribunal

Having found that these debtors were represented by counsel, the court finds that the statements that they were not represented by counsel were misrepresentations regarding the participation of an attorney in their bankruptcy cases. The court must now address whether Ms. Arthur's nondisclosure of her participation was an act of fraud or dishonesty which violates TRPC Rules 1.2(d), 3.3, 3.4 or 8.4(c) and/or Rule 9011.

 In response to the trustees' contentions that she committed an ethical violation, she emphasizes that an inaccurate statement about the level of her participation is not significant to the relief sought by the debtors in their bankruptcy cases. In response to the trustees' contention that she assisted her clients in making a misrepresentation that would subject her clients to charges of perjury, Ms. Arthur argues that her clients were not at risk of committing perjury because their statements about having an attorney were not material misrepresentations. Smith, 12-11603, Trial Brief of Barbara S. Arthur at 4 [Doc. No. 102]; Henderson, 12-11857, Trial Brief of Barbara S. Arthur at 4 [Doc. No. 102].

The court finds her reliance on the immateriality of the false statement as the excuse for her conduct surprising. Upon further review of the law in this area, the court also finds her position has some support when the misrepresentation involves a failure to disclose the participation of an attorney in drafting a pleading filed for a *pro se* litigant. In order to determine whether Ms. Arthur violated the ethics rules, the court must address whether materiality is a requirement for a finding of an ethical violation based on fraud, dishonesty, misrepresentation or

deceit. If materiality is a requirement, then it must decide whether the participation of an attorney

in preparation of pleadings is a material fact that must be disclosed.

> (a)  *Materiality of the misrepresentation is a requirement for a finding of dishonesty, fraud, deceit or misrepresentation.*

From an analysis of the TRPC and the relevant definitions, the court concludes that there

is a requirement that the misrepresentation must be material. TRPC 1.2(d) states that a lawyer

shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or

reasonably should know is fraudulent.  "Fraudulent" is a defined term that:

> denotes an intentionally false or misleading statement of **material** fact, an intentional omission from a statement of fact of such additional information as would be necessary to make the statements made not **materially** misleading, and such other conduct by a person intended to deceive a person or tribunal with respect to a **material** issue in a proceeding or other matter.

TRPC 1.0(d) (emphasis added).  "'Material' or 'materially' denotes something that a reasonable

person would consider important in assessing or determining how to act in a matter." TRPC

1.0(o).  TRPC 8.4(c) states an attorney may not engage in conduct involving dishonesty, fraud,

deceit, or misrepresentation. Of these prohibited actions, fraud, by definition, incorporates a

materiality requirement.  TRPC 1.0 (d).

Other rules do not use the term materiality. They require that the misrepresentation be

knowing. TRPC 3.3(a)(1) states that a lawyer shall not knowingly make a false statement of fact

or law to a tribunal. TRPC 3.4(b) states that a lawyer shall not assist a witness to offer false or

misleading testimony.  "Knows" is also a defined term which "denotes actual awareness of the

fact in question." TRPC 1.0(f). Requiring materiality and knowledge that a statement is false in

order to find an ethical violation would excuse the inadvertent misstatement about a matter that

is not significant to the case. To the extent that an attorney knows that a fact or statement is

important to a determination of the claims made in the litigation or knows that representation of

that fact is inaccurate or misleading, she is prohibited from making such a statement to the court or allowing her client to do so.

The court does not believe Ms. Arthur is arguing that she is free to make misleading, material statements to the court. Rather, she is relying on several ethics opinions and one federal court of appeals opinion that find that a statement about the level of attorney involvement with a litigant is not material to the claims raised in that litigation. *In re Fengling Liu*, 664 F.3d 367, 372 (2[d] Cir. 2011). *See* Salman Bhojani, Comment, *Attorney Ghostwriting for Pro Se Litigants – A Practical and Bright- Line Solution to Resolve the Split of Authority Among Federal Circuits and State Bar Associations*, 65 SMU L. Rev. 653, 663 (2012); Jeffrey P. Justman, Note, *Capturing the Ghost: Expanding Federal Rule of Civil Procedure 11 to Solve Procedural Concerns with Ghostwriting*, 92 Minn. L. Rev. 1246, 1288 (2008).  From these sources she argues that, even if the court finds that there was a misrepresentation about her involvement, it was a misrepresentation about an immaterial matter, and a misrepresentation about an immaterial matter is not an ethical violation.

These sources have addressed the issue of the disclosure of attorney participation in the context of ghostwriting, a practice in which an attorney drafts a pleading to be filed with the court, but does not disclose his involvement. The pleading is signed only by the litigant.  This is what Ms. Arthur did for these debtors. Despite a substantial amount of academic discussion on the topic, the majority of federal courts and the position of the Tennessee Board of Professional Responsibility, as stated in its formal ethics opinions, do not treat the nondisclosure of attorney participation as immaterial.

*(b)  Attorney participation in the preparation of bankruptcy filings is a material fact.*

    (i)  <u>The vast majority of federal courts require disclosure of attorney participation.</u>

Prior to 2011, the federal courts were almost unanimous in their condemnation of attorneys and litigants who failed to disclose the participation of an attorney in the preparation of pleadings filed with the court. *See* Ira P. Robbins, *Ghostwriting: Filling in the Gaps of Pro Se Prisoners' Access to the Courts*, 23 Geo. J. Legal Ethics 271, 285 and n.73 (2010)("The federal courts have almost universally condemned ghostwriting." (collecting cases)).  These federal cases do not address the propriety of the disclosure of attorney involvement in terms of materiality.  They address the importance of fairness, candor, and compliance with the procedural rules and the risk that ghostwriting poses to those aspects of the administration of justice. Specifically, these courts objected to ghostwriting on the basis that (i) nondisclosure of attorney representation unfairly causes a more lenient standard to be applied to a *pro se* litigant who is not really *pro se*, (ii) it violates the attorney's duty of candor to the court, and (iii) it violates the attorney's obligations under Rule 11 of the Federal Rules of Civil Procedure to sign pleadings and to certify that the claims and defenses raised in those pleadings are not frivolous. *Duran v. Carris*, 238 F.3d 1268,1273-74 (10th Cir. 2001)(listing federal cases and the courts' objections to ghostwriting).  At worst, the practice can be viewed as a deliberate avoidance of that certification obligation. One court also found that "ghostwriting arrangements interfere with the Court's ability to superintend the conduct of counsel and parties during the litigation." *United States v. Eleven Vehicles*, 966 F. Supp. 361, 367 ( E.D. Pa. 1997). The participation of an attorney in the preparation of the pleadings is "something" that these judges "consider important

26

in assessing or determining how to act in a matter." TRPC 1.0(o). This fact is material under the

TRPC's definition of that term.

Like the majority of federal district and appellate courts, the bankruptcy courts have

taken a dim view of ghostwriting. In *In re Mungo*, the Bankruptcy Court for the District of South

Carolina addressed a motion to convert and a motion to reinstate the automatic stay prepared by

an attorney but filed as a *pro se* filing. 305 B.R. 762 (Bankr. D. S.C. 2003). It recognized that

ghostwriting was prohibited as a violation of the South Carolina Rules of Professional Conduct

and the Federal Rules of Civil Procedure. *Id.* at 767. Following its analysis of federal cases, the

court concluded that there are certain degrees of undisclosed attorney guidance for clients that

need not be prohibited, such as limited assistance to family and friends on some specialized area

of knowledge. *Id.* at 768.

> Attorneys cross the line, however, when they gather and anonymously present
> legal arguments, with the actual and constructive knowledge that the work will be
> presented in some similar form in a motion before the Court. With such
> participation the attorney guides the course of litigation while standing in the
> shadows of the Courthouse door.

*Id.* at 768 (quoting *Ricotta v. Cal.,* 4. F. Supp. 2d 961, 987 (S.D. Cal. 1998)). The court held that

ghostwriting was an ethical violation. However, since there was only "limited authority

addressing the matter of ghost-writing within the District of South Carolina," the court

determined the fairest treatment of the attorney's conduct was to set a clear standard for the

future and only admonish the attorney who authored the motions. *Id.* at 770.

In *In re West*, 338 B.R. 906, 916-17 (Bankr. N.D.Okla. 2006), the court found an

attorney who coached his client to file a motion *pro se* because the attorney had not obtained

electronic filing privileges violated the Federal Rules of Civil Procedure and his ethical

obligations. In *In re Brown*, 354 B.R. 535 (Bankr. N.D.Okla. 2006), the court publicly

admonished an attorney who had ghostwritten a pleading after the court had found that he was

not disinterested and could not be counsel for the chapter 12 debtor.

> The [*Duran v.]Carris* decision and its progeny have made the rule in this circuit
> clear: if an attorney writes a pleading, he or she has a duty to make sure that the
> Court knows he or she wrote it. The Court is not required to play a game of
> "catch-me -if -you-can" with a ghostwriter. All counsel owe a duty of candor to
> every court in which they appear. Inherent in that duty is the requirement that
> counsel disclose his or her involvement in the case. The fact that [the attorney]
> chose not to disguise his ghostwriting is not a substitute for disclosure of his
> authoring the Objection and Motion to Reconsider.

*Id.* at 545 (citing *Duran v. Carris*, 238 F. 3d 1268 (10th Cir. 2001))(footnote omitted).

> (ii)  <u>The ABA Ethics Opinion finds that nondisclosure of representation is
> not a material misrepresentation unless there is applicable law or a tribunal
> rule that requires disclosure.</u>

In recognition of a growing number of *pro se* appearances and to improve access to legal

representation for those litigants, state bar associations and the American Bar Association began

addressing issues related to the "unbundling of legal services." *See* Carl A. Pierce, "When Less

Legal Service May Mean More Access to Justice," 41 Tenn. B. J. 22 (February 2005)(discusses

Tenn. Informal Advisory Opinion No. 2004-A-811 provided to Memphis Community Legal

Clinic and the Administrative Office  of Courts' Working Group on Self Represented Litigants

which required disclosure of attorney assistance in order to comply with requirement of candor

to the court). The ABA Model Rules allow for the limitation of services. ABA Model Rule

1.2(c). In cases where the limitation provided for the attorney to assist with pleadings without

appearing in court, the attorney was faced with the dilemma of whether to disclose his

involvement when he had no intention of appearing again in the case. In light of the existing case

law on ghostwriting and some state ethics opinions, the American Bar Association Committee on

Ethics and Professional Responsibility addressed the "divergent conclusions" that state and local

ethics committees were reaching" on the issue of disclosure. ABA Comm. on Ethics & Prof'l

28

Responsibility, Formal Op. 07-446 (2007)("ABA Ethics Opinion"). The committee issued a

formal opinion in 2007 which states that in the committee's opinion "the fact that a litigant

submitting papers to a tribunal on a *pro se* basis has received legal assistance behind the scenes

is not material to the merits of the litigation." *Id.*at 2 (discussing undisclosed legal assistance to

*pro se* litigants).  The Bhojani comment, cited above, interprets that statement as evidence that

the ABA's current position is that "ghostwriting attorneys do not violate their duties to the court

because the behind-the-scenes legal assistance is not a material fact." Bhojani, *supra* at 664.

The ABA Ethics Opinion superseded ABA Comm. on Ethics & Prof'l Responsibility,

Inf. Op. 1414 (1978) ("ABA Informal Op. 1414). ABA Formal Op. 07-446 at 4. That informal

opinion addressed the issue of whether there were any ethical restrictions applicable to a lawyer

who, without entering an appearance, had counseled a litigant who purported to appear before

the court *pro se*. It concluded that "extensive undisclosed participation by a lawyer… that

permits the litigant to falsely appear as being without substantial assistance of counsel is

improper for the reasons noted above." Those reasons included the prohibition in Disciplinary

Rule 1-102(A)(4) of the Model Rules of Professional Responsibility that a lawyer shall not

engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. ABA Informal Op.

1414. The informal opinion focused on whether the nondisclosure gave a false impression about

the *pro se* status of the litigant to the court. It did not address the materiality of the

representation.

Apparently to address its prior opinion that nondisclosure would violate DR 1-102(A)(4),

now Model Rule 8.4(c), the ABA Committee on Ethics & Professional Responsibility opined in

2007 specifically that the "unbundling of legal services" did not violate Model Rules 1.2(d)

(prohibition against counseling a client to engage in criminal or fraudulent conduct), 3.3(b)

(candor toward the tribunal), 4.1(b) (truthfulness in statements to others), or 8.4(c) (professional

misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or

misrepresentation).  ABA Formal Op. at 2.

The impact of the ABA Ethics Opinion on the analysis of ethics violations involving

ghostwriting is limited by two statements in the opinion. First, the Committee notes a

qualification. For purposes of its opinion it "assume[d] a jurisdiction where no law or tribunal

rule requires disclosure of such participation, prohibits litigants from employing lawyers (e.g.,

pro se courts), or otherwise regulate such undisclosed advice or drafting. If there is such a

regulation, the boundaries of the lawyer's obligation are beyond the scope of this opinion."

ABA Formal Op. 07-446 at 2, n.6. Second, the Committee's acceptance of nondisclosure of

participation as an ethical act of limited representation does not extend to affirmative

misrepresentations. The ABA Ethics Opinion allows nondisclosure of an attorney's involvement,

but states that an "affirmative statement by the client, that can be attributed to the lawyer, that the

documents were prepared without legal assistance" is attorney dishonesty and violates Rule

8.4(c).  *Id.* at 4.

(iii)  <u>The Second Circuit Court of Appeals relies on the local bar
association's position adoption of the ABA Ethics Opinion and refuses to
sanction a ghostwriter.</u>

In 2011, the Second Circuit Court of Appeals broke with the long line of federal cases

which had found nondisclosure of participation and ghostwriting to be ethical violations.  It

relied on the New York County Lawyer's Association's adoption of the ABA Ethics Opinion

position, and held that there were not clear prohibitions against ghostwriting within its

jurisdiction. *In re Fengling Liu*, 664 F.3d at 372.("In light of this Court's lack of any rule or

precedent governing attorney ghostwriting, and the various authorities that permit that practice,

we conclude that Liu could not have been aware of any general obligation to disclose her

30

participation to this court.") This ruling was contrary to the prohibition against ghostwriting

adopted by the First and Tenth Circuits prior to the issuance of the ABA Ethics Opinion. *Duran*,

238 F.3d at 1272-73 (discussion of cases finding ghost writing violates an attorney's ethical

obligations); *Ellis v. Maine*, 448 F.2d 1325,1328 (1st Cir. 1971).

     In holding that the attorney should not be sanctioned, the Second Circuit Court of

Appeals quoted the ABA Ethics Opinion allowing ghostwriting where the attorney could show

that she had followed Rule 1.2 of the Rules of Professional Conduct and limited her

representation.[2]  The court also noted that the Committee on Professional Ethics for the New

York County Lawyers' Association had concluded in 2010 that "it is now ethically permissible

for an attorney, with the informed consent of his or her client, to play a limited role and prepare

pleadings and other submissions for a pro se litigant without disclosing the lawyer's participation

to the tribunal and adverse counsel." *In re Fengling Liu*, 664 F.3d at 371(quoting  NYCLA

Comm. on Prof'l Ethics, Op. 742 at 1 (2010)).  However, the court still required disclosure in

situations where a particular rule, order or circumstance mandated disclosure or when

nondisclosure would constitute a misrepresentation. "[T]he attorney need not reveal his or her

identity and may instead indicate on the ghostwritten document that it was 'Prepared with the

assistance of counsel admitted in New York.'"*Id.*

     In adopting a more tolerant view of ghostwriting, the *Liu* court also addressed the two

most often stated concerns of other federal courts. "Regarding the benefit of liberal construction

afforded to *pro se* pleadings," the court adopted the ABA Ethics Committee's argument that the

assistance of counsel would be evident to the tribunal and was therefore not "a reasonable

---

[2] The ABA Ethics Opinion holds that providing undisclosed legal assistance to *pro se* litigants constitutes a form of limited representation, pursuant to ABA Model Rules of Professional Conduct 1.2(c), which states that "[a] lawyer may limit the scope of the representation [of a client] if the limitation is reasonable under the circumstances and the client gives informed consent." ABA Model Rules of Prof'l Conduct R. 1.2(c); *In re Fengling Liu*, 664 F.3d at 370.

concern." *In re Fengling Liu*, 664 F.3d at 370-71. "Regarding the attorney's potential

dishonesty in avoiding accountability for his representation," the court cited the ABA Ethics

Opinion and stated that "there is no such dishonesty as long as the client does not make an

affirmative representation, attributable to the attorney, that the pleadings were prepared without

an attorney's assistance." *Id.* at 372 (citing the ABA Ethics Opinion at 4).

> (iv) Even the adoption of a lenient standard on ghostwriting would not
> excuse Ms. Arthur's affirmative misstatements about attorney
> participation.

This court has been unable to find any ruling by the Sixth Circuit Court of Appeals

indicating whether it would follow the Tenth Circuit's strict prohibition against ghostwriting

expressed in *Duran v. Carris* or the Second Circuit's more tolerant approach adopted in *In re*

*Fengling Liu.* Even if this court were to apply the more lenient view advocated by Ms. Arthur

and espoused in the ABA Ethics Opinion, that view finds that only silence on the issue of

representation is acceptable. An affirmative misstatement made by a client at an attorney's

suggestion is still prohibited. On Mr. Smith's petition, there is the statement that "Debtor is not

represented by counsel." Ms. Henderson's petition contains the same representation. Ms. Arthur

prepared the petitions. She admits that she came up with the *pro se* solution to her filing

problem. She admits she or her staff inserted the sentence "Debtor is not represented by counsel"

on the petition where she should have signed. The court finds that this was an affirmative

misrepresentation regarding the participation of their attorney. The misrepresentation made by

the debtors is attributable to their attorney. Ms. Arthur's involvement in that misrepresentation is

an act of dishonesty. TRPC 8.4(c); ABA Ethics Opinion at 4.

> (v) The Tennessee Board of Professional Responsibility excuses
> disclosure of assistance in limited situations not applicable in these cases.

Without controlling federal precedent, the court will do as the Second Circuit did and look to the rules of professional conduct that have been adopted by this court. They are the TRPC. E.D. Tenn. LBR 2090-2. The Board's position has evolved from its first formal opinion in 1985 to the most recent opinion in 2007 on undisclosed participation. Under the Tennessee Rules of Professional Responsibility, which preceded the TRPC, the "extensive undisclosed participation by a lawyer" was "improper." Tennessee Formal Ethics Op. 85-F-83(1985)(quoting ABA Informal Ethics Op. 1414 (1978))("1985 Formal Opinion").  The 1985 Formal Opinion addressed whether a county attorney could draft pleadings and assist in the execution and filing of an agreed order without appearing as counsel or signing the documents. It was a very short opinion and its entire discussion of the issue was a brief quotation from the ABA Informal Ethics Op. 1414.

In 2004, the Board issued an informal opinion on limited representation and disclosure of attorney assistance to the Community Legal Center of Memphis, Tennessee and the Administrative Office of the Courts' Working Group on Self Represented Litigants. The opinion addressed how attorneys could provide limited service in a legal clinic environment and whether they had to sign the pleadings that they prepared.  The informal opinion suggested that attorneys put a legend on the pleadings disclosing their participation in order to meet their duty of candor to the court. On June 17, 2005, the Board adopted its informal opinion as a formal opinion and issued Tennessee Formal Ethics Op. 2005-F-151 ("2005 Formal Opinion"). That opinion again relied on the ABA Informal Op. 1414. The Board acknowledged that the Code of Professional Responsibility had been replaced by the Code of Professional Conduct, but that the "rationale remained the same." It opined that extensive undisclosed participation by a lawyer that permits the litigant falsely to appear as being without substantial assistance of counsel is improper. 2005

Tn. Formal Op. 2005-F0151 at 5. The Board agreed with Delaware State Bar Ethics Opinion

1994-2 which required an attorney to disclose his participation to the court. After reviewing

Florida Bar Opinion 79-7, Alaska Bar Opinion 93-1, and New York City Bar Formal Opinion

1987-2 and Virginia Legal Ethics Opinion 1127, the Board determined that:

> notifying the court that counsel has assisted the *Pro Se* litigant without
> expectation that counsel will appear and represent the client in the manner
> described by the inquiring attorneys is sufficient. The phrase "Prepared
> with the Assistance of Counsel" is recommended for inclusion on such
> pleadings in a prominent manner.

*Id.*

Two years later and at approximately the same time the ABA Committee issued the ABA

Ethics Opinion, the Tennessee Board of Professional Responsibility revisited its position on

undisclosed representation.  Tennessee Formal Ethics Op. 2007-F-153. ("2007 Formal Opinion")

The Board noted that the 1985 Formal Opinion had relied on the ABA Informal Op. 1414 which

in turn relied on a disciplinary rule that was no longer applicable because of the change from the

Rules of Professional Responsibility to the TRPC. After finding that the disciplinary rule was no

longer applicable, the Board proceeded to address the propriety of lawyers assisting *pro se*

litigants in preparing pleadings wherein they fail to identify their assistance on the pleadings.

The opinion does not adopt the ABA Ethics Opinion's new position on the materiality of

representations about disclosure.  Instead, it repeats the language of ABA Informal Op. 1414.

After acknowledging the prohibitions of TRPC 8.4(c) against dishonesty, fraud, deceit and

misrepresentation and TRPC 1.2(d) (assisting a client in fraudulent conduct), it states that:

> Thus, an attorney in Tennessee may not engage in **extensive** undisclosed
> participation in litigation in behalf of a pro se litigant as doing so permits and
> enables the false appearance of being without substantial professional assistance.

Tennessee Formal Ethics Op. 2007-F-153 at 1. The Board then elaborates on what it

considers **not** to be "extensive undisclosed participation":

This prohibition does not extend to providing undisclosed assistance to a truly pro se litigant. Thus, an attorney may prepare a leading pleading including, but not limited to, a complaint, or demand for arbitration, request for reconsideration or other document required to toll a statute of limitations, administrative deadline or other proscriptive rule, so long as the attorney does not continue undisclosed assistance of the pro se litigant. The attorney should be allowed, in such circumstances, to elect to have the attorney's assistance disclosed or remain undisclosed. To require disclosure for such limited, although important, assistance would tend to discourage the assistance of litigants for the protection of the litigants' legal rights. Such **limited** assistance is not deemed to be in violation of RPC 8.4(c).

Board of Prof'l Responsibility, Formal Op. 2007-F-153 at 1-2(2007)(emphasis added).

The 2007 Formal Opinion does not mention the 2005 Formal Opinion, although it seems to undercut the requirement that the legend "Prepared with the Assistance of Counsel" must appear on the pleading. The 2007 Formal Opinion seems to allow ghostwriting without any disclosure, but only to the extent of providing assistance for the preparation of a leading pleading for a *pro se* litigant. It still prohibits an attorney from preparing "pleadings and other legal documents to assist a pro se litigant in the conduct of his or her litigation where doing so creates the false impression that the litigant is without substantial legal assistance." *Id.* at 2. Based on the 2007 Formal Opinion, the court concludes that Tennessee has not adopted the position of the ABA Committee that a representation regarding the existence of counsel is not a material representation. Any nondisclosure which misleads the court about the existence of the substantial assistance of counsel is still prohibited.

The use of the terms "extensive" and "limited" creates some confusion about when "limited assistance" becomes "extensive participation." Had the court found that Mr. Smith and Mrs. Henderson were truly *pro se* on the date of filing and had Ms. Arthur made no representation about whether there was attorney participation, her conduct would not have violated TRPC 8.4(c) based on the 2007 Formal Opinion's interpretation of the TRCP. If the court were to find that the length of time that Ms. Arthur's misrepresentation continued is the

only consideration, then it would be hard pressed to find a violation based on nondislcosure. Ms. Arthur prepared a leading pleading - the bankruptcy petition - without disclosing her involvement.  She did not continue her undisclosed involvement. To the contrary, she disclosed her involvement within days of the filing. However, the 2007 Formal Opinion does not excuse her conduct. Her clients were not pro se and she assisted them in making a misrepresentation about their relationship with her. The Board did not adopt the position that attorney participation is not material to the claims made in the litigation. It adopted the language of ABA Informal Op. 1414 which focuses the analysis on whether the court was misled by the undisclosed participation.  In these cases, the court finds that it relied on the debtors' representations, suggested by Ms. Arthur, that they were not represented by counsel, and it sent the deficiency notices alerting the debtors to the potential for dismissal of their cases to the debtors who were relying on Ms. Arthur for representation.  For that reason, the court finds that the nondisclosure was extensive enough to mislead the court, and therefore it was improper.

(vi)  Facts regarding attorney participation are important to a bankruptcy court's determination of how to administer the case.

Having found that Ms. Arthur was involved in an act of dishonesty and that she assisted her clients in making a misrepresentation to the court, the court will address whether that misrepresentation may be excused because it was immaterial under the definition of material in the TRPC. In light of the divergent views on the issue of disclosure of attorney participation and the lack of Sixth Circuit case law on this issue, the court also believes that clarification of its position on the materiality of a fact regarding attorney participation in the preparation of bankruptcy pleadings is necessary. The court is not persuaded that the ABA Committee's position on the materiality of nondisclosure is applicable in a bankruptcy context. The provisions of the Bankruptcy Code make disclosure of attorney participation material to a bankruptcy case.

36

There are specific statutory provisions which involve the court in the debtor/attorney

relationship. Those provisions raise the following issues:

1.  Whether the attorney is a "debt relief agency?" [11 U.S.C. § 101(12A)];

2.  whether the debtor's attorney is disinterested and therefore even qualified to be counsel

    [11 U.S.C. § 327(a)];

3.  whether the attorney must disclose his compensation in the litigation [11 U.S.C.

    § 329(a)];

4.  whether the attorney may be compensated from property of the estate [11 U.S.C.

    § 330(a)(1)];

5.  for consumer debtors, what is the scope of the engagement and what is being charged for

    those services [11 U.S.C. § 528(a)];

6.  whether the terms of the engagement have been properly documented [11 U.S.C.

    § 528(a)];

7.  whether the attorney has performed the services promised [ 11 U.S.C. § 526(a)(1), (2)

    and (3)];

8.  whether an attorney has been involved in investigating whether the debtor has fully and

    accurately disclosed his assets, their value, claimed his exemptions and listed his

    creditors [11 U.S.C. § 527(c)]; and

9.  whether the debtor has received certain required disclosures from his attorney or

    reviewed those disclosures without the assistance of counsel [11 U.S.C. § 342(b)(1),

    § 527(a)].

In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 elevated the

importance of the disclosure of attorney participation by defining debt relief agencies, adding

additional duties for counsel for the debtor and authorizing the court to award sanctions under 11 U.S.C. § 526(c) for noncompliance. Without disclosure of attorney participation, the court will not know whether these provisions are being violated. As the district court noted in *United States v. Eleven Vehicles*, "[c]ertain conduct may be sanctionable if committed by counsel but not if committed by a party…. Knowing whether the pleadings were prepared by a lawyer or non-lawyer is therefore important to the administration of justice in the case." *United States v. Eleven Vehicles*, 966 F. Supp. at 367; Fed. R. Bankr. P. 9011(c)(2)(A). In addition, the detection of ghostwriting is more problematic in a bankruptcy proceeding.  Many of the initial pleadings filed in a bankruptcy case are forms completed with short answers and numbers. They do not require descriptions of a party's claims or defenses that contain citations and legal terminology that would make the participation of counsel "evident to the tribunal." *In re Fengling Liu*, 664 F.3d at 370-71.

These bankruptcy administrative and statutory requirements related to the attorney-client relationship, coupled with the federal courts' longstanding concerns about the impact of ghostwriting on fairness, candor, and compliance with the signature requirement of Rule 11 of the Federal Rules of Civil Procedure, lead this court to conclude that attorney participation in the preparation of a bankruptcy pleading is a material fact. It is a fact which is relevant to the proper administration of the bankruptcy law, and it is a fact that a bankruptcy judge would consider important in assessing or determining how to proceed. As such, it is a material representation under the TRPC. Any knowing misrepresentation regarding the level of attorney participation is a violation of an attorney's duty of candor to the tribunal and is a violation of TRPC 8.4(c).

### B.      Violation of Fed. R. Bankr. P. 9011

With respect to whether her conduct violated Fed. R. Bankr. P. 9011, the court notes that the rule requires that a pleading be signed by at least one attorney in the individual attorney's name. Fed. R. Bankr. P. 9011(a). A party who is not represented by an attorney shall sign all papers. *Id.* In this case the petition was signed by the debtors although the court has found that they were represented by counsel. Therefore, they were not the appropriate parties to sign the petition to comply with Rule 9011.

Rule 9011 also requires that a party who presents a pleading certify that the pleading being filed is not being submitted for an improper purpose. Fed. R. Bankr. P. 9011(b)(1).  To the extent that a pleading is being presented as *pro se* by the attorney to avoid the obligation of certifying the claims, defenses and other legal contentions are warranted and that the factual contentions have evidentiary support, the court finds such a pleading has been submitted for an improper purpose. However, Ms. Arthur's failure to sign was not based on an attempt to avoid her obligations with respect to the contentions contained in the Skeleton Filings. Nevertheless, the submission of the pleadings without her signature was for an improper purpose; *i.e.,* to file pleadings before she was authorized to do so.

The court finds no authority in the Sixth Circuit that the nondisclosure of an attorney's involvement in the preparation of pleadings filed with the court is a *per se* violation of Fed. R. Bankr. P. 9011. The court is hesitant to find that ghostwriting is improper under any circumstance in light of the position taken in the 2007 Formal Opinion, which allows nondisclosure of the identity of the attorney where the attorney is only assisting with a leading pleading and the scope of services has been appropriately limited.

### C.   Sanctions

Having found that ethical violations occurred, the court must consider what sanctions are appropriate. Sanctions may be imposed by the court to compensate other parties and to ensure compliance with the court's rules. The UST and the Trustee contend that Ms. Arthur's actions warrant suspension from the practice of law in this court.  While the court agrees that Ms. Arthur's actions merit sanctions, the court does not agree that suspension is appropriate.

Suspension is imposed where there has been a pattern of conduct which a court has previously ordered to stop or where the continued practice by the attorney is "an immediate danger to the public." *In re Cowan*, 620 F.Supp. 2d 867, 873 (E. D. Tenn. 2009).   The UST argues that there is a pattern. He contends that this is Ms. Arthur's second violation for practicing without authorization. The court does not find that the violation involving an unreasonable limitation of the scope of services is part of a pattern of conduct of the unauthorized practice of law. Ms. Arthur complied with her suspension. She did not practice until her six month suspension had ended. At the time she met with and advised the debtors, she could practice law in the state of Tennessee.  She simply could not appear in court or file pleadings until she was reinstated, and that reinstatement was to be automatic. She followed through with the process of reinstatement once she became aware of the requirement. Since the court does not find that the violation she committed is part of a pattern of the unauthorized practice of law, the court will not suspend Ms. Arthur from the practice in this court on the basis of a pattern of unauthorized practice.

A more difficult sanction question concerns Ms. Arthur's inappropriate use of the right to limit her services and whether that conduct poses a danger to the public.  She directed her clients to represent that they were proceeding *pro se* when she always intended to be their attorney. Ms. Arthur chose to put her clients at risk rather than referring them to another attorney or associating

40

counsel to assist her so that she could provide competent representation.  One of the purposes of

the Bankruptcy Abuse Prevention and Consumer Protection Act was to ensure that attorneys

provided the services they promised and put in writing what those services would be. 11 U.S.C.

§§ 526 (a)(1) and 528(a)(1). Her attempt to limit the scope of her employment was not in

compliance with either of those sections. Because this was an unusual set of circumstances

involving the timing of reinstatement, the court does not find that this problem is likely to

reoccur; therefore, suspension for this violation is not required to protect the public.  The court

does find that Ms. Arthur needs to be reminded of her ethical obligations and the appropriate

manner of obtaining the informed consent required for limiting the scope of employment.  To

that end, the court will order attendance at continuing legal education on professionalism and

ethics.

　　　　In addition, Ms. Arthur's actions required the court to send deficiency notices for the

Skeleton Filings and delayed the 341 meeting for Mr. Smith. Two meetings of creditors were

held for each debtor. The debtors had to meet with a second bankruptcy attorney and review their

information. These were all unnecessary actions that delayed the process for these two debtors.

The UST and the Trustee are the parties tasked with monitoring the operation of the bankruptcy

system and chapter 13 cases respectively. They discovered Ms. Arthur's actions and will be

awarded a judgment to reimburse them for a portion of their fees and expenses. Ms. Arthur will

also be ordered to reimburse any expenses incurred by Mr. Smith or Ms. Henderson as a result of

having to obtain new counsel or attend multiple meetings of creditors. Ms. Arthur has already

waived her fees in these cases.  The court intends for these sanctions to impress upon Ms. Arthur

the requirements of (1) competency to handle the representation taken, (2) communication which

ensures informed consent and (3) documentation of the engagement which complies with the

Bankruptcy Code. The court anticipates that the total of the monetary sanctions will be roughly

equivalent to the amount Ms. Arthur charges for handling one chapter 13 case.

With respect to the violations of her duty of candor to the tribunal, the court does not find

that there was a pattern of conduct of filing ghostwritten pleadings or that Ms. Arthur knowingly

violated TRPC 1.2, 3.3, 3.4 and 8.4. The misrepresentations involved the level of her

participation in preparation of leading pleadings for these debtors.  She appears to have had a

good faith belief that her solution to her filing problem was within the acceptable parameters of

Tennessee's position on nondisclosure of her participation. She believed that she would be

reinstated before she needed to make a physical appearance, and she was. As indicated by the

court's lengthy analysis of this area of the law, the ethics rules on disclosure and limited

representation have changed over the last decade. The courts seem to acknowledge that the

position of each jurisdiction needs to be clarified based on the opinions of the applicable

governing body for professional conduct. Even when a court prohibits the practice of

ghostwriting, the courts show some leniency to the offending attorney whose nondisclosure is

first found to be a violation. *See, e.g., In re Mungo*, 305 B.R. at 770. Under the circumstances of

this case and with respect to the violations of her duty of candor to the court, the court finds that

Ms. Arthur should receive only an admonition from the court that nondisclosure of attorney

participation in a bankruptcy proceeding is a violation of her duty of candor to the court.

In the future, the requirement of disclosure should be clear for any attorney considering

whether to ghostwrite pleadings and present them to this court.  If an attorney drafts a pleading

for filing with this court, or assists a debtor with drafting a pleading or completing the answers to

any form knowing that it is going to be filed with the court and presented as the debtor's work,

the attorney must be disclose that assistance. Because the court has found that his or her identity

42

is material to the proper administration of the bankruptcy case, he or she must also disclose his or her identity.  If the attorney has limited the scope of his or her representation, the disclosure and participation in the case should be consistent with any representation agreement reached with the client. If there is any limitation of the scope of bankruptcy representation, the attorney must obtain the informed consent of the client to the limitation.  The scope of the representation should be in writing in order to comply with the requirements of 11 U.S.C. §§ 526 and 528. Finally, the attorney should be prepared to demonstrate that the limitation is reasonable under the circumstances of the case. To any attorney considering such limited representation in bankruptcy, the court recommends the discussion in Professor Pierce's article, 41 Tenn. B. J. 22, and the 2005 Tenn. Ethics Opinion, both of which discuss what is an appropriate limitation of services and how to obtain informed consent.

The court finds that no additional sanctions are appropriate for Ms. Arthur's violation of Fed. R. Bankr. P. 9011.

### III.    CONCLUSION

For the reasons set forth herein, the court will GRANT the motions in part and DENY them in part.  The court finds that there is clear and convincing evidence that Ms. Arthur committed an ethical violation with respect to the limitation of her services, but does not find either that the violation is part of a pattern of conduct or that the conduct, under the circumstances of these cases, poses a risk to the public. The court does not find that there is clear and convincing evidence that Ms. Arthur knew that her failure to disclose her involvement for a very brief time violated her duty of candor to the court in light of the language of the 2007 Formal Opinion. In the absence of any prior ruling by the Sixth Circuit or this court on the propriety of such conduct, the court will exercise leniency with respect to the imposition of

43

sanctions for this violation.  As to any future filings, the court will consider the involvement of an attorney in the preparation of a pleading to be presented to this court to be a material fact, and any misrepresentation regarding that attorney's participation or failure to disclose the assistance of counsel will be considered a violation of that attorney's duties of candor to the court.

Accordingly, the court will impose sanctions for only the ethical violation of TRPC Rule 1.2(c).  The court will order that (1) Ms. Arthur complete 6 hours of continuing legal education on ethics and professionalism on or before May 31, 2013; (2) pay attorneys' fees and expenses up to $1,000 to the UST and $1,000 to the Chapter 13 Trustee; and (3) pay any out-of-pocket expenses incurred by Mr. Smith or Ms. Henderson arising from their need to obtain new counsel and attend multiple meetings of creditors, excluding the fee paid to substitute counsel. Had she not already waived her fees, the court would also have denied Ms. Arthur any compensation for the work which she performed for these clients.

The Trustee and the UST shall have 14 days to file a request for fees and expenses. The clerk is directed to send a copy of this Memorandum and the Order filed contemporaneously herewith to counsel of record for Mr. Smith and Ms. Henderson, and they shall have 28 days from entry of the order to file a request for expenses, including, without limitation, their mileage to attend any additional meetings of creditors at the same rate allowed for witnesses under Rule 9016 of the Federal Rules of Bankruptcy Procedure.  Ms. Arthur shall have 14 days after service of the request(s) to respond. The court will review the requests and responses and enter an order without further hearing unless the parties request oral argument. Upon receipt of a request for argument, the court will set the matter for hearing.

A separate order will enter.

# # #